CAPE GIRARDEAU COUNTY (WESTERMANN v.). See Case No. 17,432.

## Case No. 2,391.

### CAPELLE v. HALL.

[12 N. B. R. (1875) 1.][1]

District Court, D. Delaware.

PARTNERSHIP—FRAUDULENT ACT OF ONE PARTNER.

1. A partner is bound by the act of his copartner within the scope of the business of the firm, even if that act be fraudulent as between the partners.

2. B., a member of the firm of E. H. & Co., obtained from S., the bankrupt, two notes made by S. to the order of E. H. & Co. and for their accommodation, and it was understood that the notes should be paid at maturity by E. H. & Co. The notes were obtained by B. without the knowledge of H., his partner, and were indorsed with the firm name, and discounted at bank, and the proceeds used by B. for his own purposes in fraud of H. H. paid the notes at maturity, and proved them as a claim against the bankrupt estate due to him as an individual. Held, that H. was bound by the knowledge of his partner that no consideration passed to S. for the notes, and by B.'s agreement that the firm would pay notes at maturity, and that the proof must be expunged.

[Compare Babcock v. Stone, Case No. 701.]

Petition [by George S. Capelle, assignee of Jacob Sinex] to expunge proof of claim by the respondent [Edwin Hall].

[1] [Reprinted by permission.]

Geo. H. Bates, for petitioner.
Thos. J. Clayton, for respondent.

BRADFORD, District Judge. I am asked to strike off two promissory notes held by Edwin Hall, of the city of Philadelphia, from the list of claims proven, for reasons stated in the petition of George S. Capelle, assignee in bankruptcy of Jacob Sinex. The first note is dated May 21, 1870, at Chester, Pa., and is for the payment, at four months, of the sum of fourteen hundred and eighty-six dollars, to the order of Edwin Hall and Company, and by them indorsed and signed "Jacob Sinex." The second note is dated June 22, 1870, at Chester, Pa., and is for the payment of thirteen hundred and eighty-six dollars, at four months, to the order of E. Hall & Co., and by them indorsed and signed "Jacob Sinex." Edwin Hall claims as indorsee of E. Hall & Co. It is admitted that one E. M. Broomall was at the same time a member of the firm of E. M. Broomall & Co., and also of the firm of E. Hall & Co., and was so at the time of the making of both the above-mentioned notes. It is admitted that E. M. Broomall, as a member of the firm of E. Hall & Co., obtained both the notes in question from Sinex, without the knowledge of Edwin Hall, the other member of that firm. It is also admitted that Sinex gave the notes in question into the hands of E. M. Broomall, with the understanding that he, Sinex, was in no case to be called on for payment of the same, but would be protected from any such liability by the payees of the note, Sinex simply loaning his credit to enable E. Hall & Co. to borrow money on the note. In short, the one gave and the others accepted the notes as accommodation notes. It will be observed, then, that these notes were both made to E. Hall & Co., as the payees thereof, to the same firm, though on one note it is called E. Hall & Co., and on the other "Edwin Hall & Co."

Let us consider the case of the note for fourteen hundred and eighty-six dollars first. The payment of this note is objected to by the assignee on two grounds: First, Edwin Hall being a partner in the firm of "Edwin Hall & Co.," at the time this note was given, must be presumed to have had notice that the note in question was received without any consideration whatever passing from the partnership to him, and as the firm could not sue, so Edwin Hall, as an individual member of the firm affected by this presumed knowledge of the want of consideration, and bound by the act of his partner, though unknown to him at the time, could not sue Sinex; and, secondly, if Edwin Hall ever was the legal owner of this note, he became so by purchasing it after it was dishonored, and took it subject to all equities as between the original parties, viz.: Sinex and "Edwin Hall & Co." As the

result of the admissions of counsel and the evidence in this case, I think it is established that this note was presented for discount by E. M. Broomall, on behalf of E. Hall & Co., to a bank in Philadelphia, that it was there discounted, and the funds passed to the credit of Edwin Hall & Co., and were drawn out by E. M. Broomall, as the funds of "Edwin Hall & Co." That on the day this note became due, without the same having gone to protest, but to save the same from protest and protect himself from suit as a member of the firm of Edwin Hall & Co., Edwin Hall did then and there pay the said note, and thus became the owner and possessor of the same, by transfer and delivery of the party who had discounted it. Edwin Hall paid this note with his own individual funds. Did the fact that Edwin Hall was a member of the firm of "Edwin Hall & Co.," at the time of the making and delivery of the note in question to E. M. Broomall, incapacitate him from suing Sinex on said note, in case it should be transferred legally to him as an individual for a valuable consideration. If the affirmative of this proposition is true, it settles the question of liability on these notes. This note was an accommodation note given by Sinex to the firm of Edwin Hall & Co. It was to enable that firm to raise money on the strength of Sinex's name. It is a mistake to suppose it was an accommodation note to E. M. Broomall. Broomall represented the firm of Edwin Hall & Co. in requesting this accommodation, and the —— firm were the payees of the note. The funds to be raised could pass to none but the payees or their order. They were passed to the credit of the firm in point of fact, and the subsequent fraud of Broomall in using the funds for his own private benefit, does not in the least affect the relation in which the payees stood to the accommodation maker. This firm then and there agreed not to call upon Sinex for payment of that note, on the ground distinctly understood between them, that there was no consideration for it. I say this firm then and there agreed, for I consider Mr. Edwin Hall, the claimant, was bound by the act of his partner. E. M. Broomall, in that transaction, and none the less because it was unknown personally to him at the time.

The trust reposed by one partner in another is of the most extensive and serious character; so wide is the range that every honest partner is absolutely in the power of any dishonest one with whom he may have rashly associated himself. But while he may suffer from the wrongful acts of his dishonest partner, he owes it to the business community both in morals and in law that no one doing legitimate business with the concern, still more no one befriending the concern by a loan of credit, should suffer because of the acts and representations of one whom the innocent and honest partner had selected as his agent, and to whose acts and representations he had requested full faith and credit to be given. I take it for granted, in the transaction of the affairs of a general business firm, the taking of accommodation paper and the consequent necessary agreement, growing out of that fact, not to call upon the maker for payment, is fully within the scope of the purposes of such a partnership and of the means proper to effect such purposes, and an act to the consequences of which, therefore, one partner can and does bind the other. The general principle governing such cases is well stated by Chancellor Kent (3 Comm. 41) in these words, viz.: "The act of one partner, though on his private account and contrary to the private arrangement among themselves, will bind all the parties if made without knowledge in the other of the arrangement, and in a matter which, in the usual course of dealing, has reference to business transacted by the firm;" and again on the same page: "In all contracts concerning negotiable paper the act of one partner binds all, and even though he signs his individual name, provided it appears on the face of the paper to be on partnership account, and to be intended to have a joint operation." Does the contract or agreement made by a member of a firm in the name of the firm who are the payees of an accommodation note, and who raise money on the same, not to call upon the maker for payment, bind the other member who was personally ignorant of the transaction? How far is the ignorant partner liable for the acts and declarations of the other? In 7 East, 210 (Swan v. Steele), the court decide the liability of one partner for the act of another on the following facts: A, B, and C traded under the name of A and B in the cotton business (C being a secret partner); A and B traded alone under the same firm name in the business of grocers, and to pay a debt they owed in the grocery business indorsed over a bill belonging to the firm in which C was then partner in the cotton business—and this without the knowledge of C; held, C was liable to be sued on this indorsement, the plaintiff not knowing at the time of the misapplication of the partnership funds.

This case illustrates the liability of one partner for the acts of the other, even when the act is a fraud on the innocent partner. In Jacaud v. French, 12 East, 317, where money had been received by one member of a firm unknown to the other member, for the purpose of paying certain bills, and the former, instead of paying, as was requested, diverted the funds to another purpose, and afterwards when these bills came into the hands of another firm for value, of which the partner ignorant of the reception of the money for the purpose aforesaid was also a member, and the cotton firm brought suit on these bills, the court held that the plaintiffs could not recover, and used these words: "Jacaud, being a partner with Blair, must

be considered as having together with Blair (the fraudulent partner of the first firm) received money from the drawees to take up this very bill, how then can he, because he is also a partner with Gordon (the other individual member of the second firm suing on the bills) in another house, be permitted to contravene his own act, and sue upon this bill which has been already satisfied as to him." This case establishes the principle that an act of one partner which amounts to a defense against an action thereafter brought, if it had been performed by all the members of the firm, will, although in fraud of the other innocent and ignorant partner, be a defense not only in an action brought by him individually, but by any other firm of which he was at the time a member. Not only is he prevented from suing separately by reason of being bound by the act of his dishonest partner, but this incapacity disables another firm receiving the said bill for value, of which he was also at that time a member, from suing, inasmuch as he is a necessary party to their suit. In that case one partner (the dishonest one) performed an act which amounted to a valid defense, although unknown to the innocent partner, and that act bound the ignorant and innocent partner. In this case one partner makes a contract to take up accommodation paper lent to the firm of which he is a member, certainly a valid defense in a suit by payees against the maker. And how can the principle be different where the suit is sought to be sustained by one of the individual payees composing the firm making this contract, instead of both? Richmond v. Heapy, 1 Starkie, 202, was an action brought to test the validity of a commission in bankruptcy, and the question was, whether the commission was supported by a good petitioning creditor's debt, and the facts are these, viz.: One of three partners undertook to provide for two bills of exchange drawn by the three partners, and accepted by a fourth person, when they should become due. It was held that the three partners could not prove their claim on the acceptance in bankruptcy, that they were bound by the conduct of the one partner taking the acceptance as an accommodation one, although they were ignorant of the fact, and it was in fraud of their rights.

Now this case would be the same exactly as ours, if the claim in this instance was sought to be proved by "E. Hall & Co." It does establish, however, that this agreement not to sue Sinex, arising out of the acceptance of this paper as accommodation paper for the firm, was the act of the firm, and consequently the act of the individual members of the firm. For in this case the bills were drawn in the names of the three members, as in ours the note was given to and received by all the members of the firm, viz.: E. M. Broomall and Edwin Hall. Now, if the firm (in the case last cited) could not sue because by the act of one of its members it had created a defense, why, in our case, when a complete defense has been made by the joint act of all the individual members, should one of those individual members be permitted to do (that is, sue on this note) that which he has jointly with his partner promised not to do? What has he done that entitles him to bring such suit? He has paid the note in the hands of the holder, and that is just what he, together with his partner, promised to do, and which, if he, or his partner, or both, had not done, and Sinex had been made to pay by the owner of the note, he could have been forced to pay by law to the extent of all his property liable to process. In the case of Sparrow v. Chisman, 9 Barn. & C. 241, where one of several partners in a banking house drew a bill in his own name upon a third party, on the condition that the drawer should provide for the same when due, it was held that all the partners in the banking firm could not recover on the bill. Baily, Justice, in this case, says: "A party to whom an acceptance is given on a condition that he will provide for it when due, and who does not perform that condition, cannot sue the acceptor, and if Peckover, the party making the promise, therefore, could not have sued alone, how can he sue jointly with others? His partners, being bound by his acts, cannot recover through him." May we not ask, in reference to the case before us, if both partners made this promise not to sue, and both are bound by such promise as the act of the firm, how can one of these promisors sue individually? It was the agreement not to hold him responsible for the payment of the notes which induced Sinex to give them; this agreement and undertaking grows necessarily out of the transaction. Edwin Hall, by his authorized agent, was a party to that agreement, and cannot be permitted to contravene it.

This case may be placed in another point of view by applying to it a well-known principle of law applicable to promissory notes. Story on Promissory Notes, on page 517, in discussing the rights of an indorser who takes up or pays a promissory note, says: "If, indeed, any of those parties, either as maker or indorser, be such merely for his accommodation, then his claim is ended; for the payment has already been made by the very party who is ultimately bound to indemnify and reimburse all the others; and the law, to avoid circuity of action, will treat it as a direct extinguishment." In this case, a member of a firm, Edwin Hall, finds a note going to protest on which he, as a member of the firm of Edwin Hall & Co., is liable to be held responsible. Not with a view to speculation, but as he himself says in his evidence in reference to the fourteen hundred and eighty-six dollar note: "As it had been discounted for the firm and bore our indorsement, I paid it;" and in reference to the thirteen hundred and eighty-six dollar

note: "It bears our indorsement, and at maturity I paid it." He, as the representative of the firm, discharged a firm liability by paying this note. It is true, he can make his partner, E. M. Broomall, account with him for furnishing funds with which to satisfy a partnership debt; but the debt is no less satisfied as against the partnership, and as Edwin Hall was one of the accommodation payees liable to be sued and made responsible by Sinex, had he been forced to pay the note, it makes no difference whether this payment be considered a payment by the firm, or a payment by a member of the firm on behalf of the firm (if, indeed, such a distinction can be drawn). As the law avoids all circuity of action, the statement of the indisputable fact that Edwin Hall could, as a partner of the firm of Edwin Hall & Co., have been made liable to the extent of all he possessed to Jacob Sinex, the accommodation maker, had he been forced to pay these notes, seems to settle the question of Edwin Hall's right of suit. Authorities have been cited by the claimant's counsel to show that where there was a cross note, there was a consideration, and the cases, which, no doubt, are law, are sought to be applied to the question of the notes under examination.

This line of argument is inconsistent with the express and repeated declaration of counsel on both sides at the hearing, that these two notes were accommodation notes; that is to say, that there was no consideration passing from Edwin Hall & Co. to Sinex for them. Under these circumstances, even were it true in point of fact that Sinex gave a cross note of Edwin Hall & Co. in exchange for one or both of these notes, I could treat such cross note only as a means of indemnity received by Sinex in case he should be made liable on his notes to Edwin Hall & Co.; any other view of the case would be inconsistent with the admissions that these notes were accommodation notes. But there were no cross notes between these parties. The note given as an indemnity was the note of E. M. Broomall and not the note of the firm. Nor was there any specific exchange of securities—each party holding himself and themselves liable on the paper primarily given by themselves as makers. There is no evidence whatever of this. There is no evidence whatever that Sinex desired or took the note of E. M. Broomall with a view of raising money upon it. As, then, they were not cross notes between the same parties, for their mutual accommodation, nor an exchange of securities between the same parties, and as the parties by their counsel admit that these two notes in question were accommodation notes, I am bound to treat them as accommodation notes. The authorities therefore cited by the claimant's counsel in reference to the sufficiency of the consideration of a cross note, though no doubt law, are in no wise applicable to the facts of this case. So, too, the authorities cited going to show that a bona fide holder of accommodation paper can recover against such accommodation maker or indorser although he knew at the time he took such paper that it was for accommodation only, are no doubt good authorities on that point. But the difficulty arises from their having no application to the facts of this case. If the holder, in all other respects, has a right to sue, the fact that he knew the paper to be accommodation, when he took it, does not destroy that right, but in this case Edwin Hall never had a right to sue, for he was one of the accommodation payees, and, having been paid by the parties, or one of the parties, ultimately liable to pay it, it was extinguished and its negotiable quality destroyed.

It is no doubt a hardship that Edwin Hall should be cheated by his partner. That is the result of misplaced confidence (too frequently happening among business men), when a little more care and caution would have avoided all the evil. When Edwin Hall entered into partnership with E. M. Broomall, he gave him a letter of credit to the business world, and he plainly said to Jacob Sinex and all others doing business with the firm, Whatever arrangements you make within the scope of our partnership business I will ratify; and now, when the firm has through one of its partners, E. M. Broomall, accepted a favor, the loan of credit, which they made available and turned into cash, and made the arrangement not to call upon Sinex for the payment of the notes thus loaned, to permit either or both of those partners to sue Sinex would not only be destructive of the fundamental principles on which the liability of the partnership for the act of the individual member is based, but would be unjust and inequitable to Sinex in the highest degree—as he based his conduct on the promise of the partnership, through one of its members, that he would not be called upon for the payment of the notes. And further, Mr. Edwin Hall could not be permitted to contravene by his action now, that which he authorized his partner to do. If Mr. Sinex was deceived as to the wishes and desires of the partnership in giving these notes, Mr. Edwin Hall enabled E. M. Broomall to do so, by giving him the credit arising from this partnership relation with him. If there is hardship in the one case it is of Mr. Edwin Hall's own creation. The hardship in Sinex' case is one which arises not from any fault or negligence of his own, but from his trusting to the declarations of Edwin Hall that E. M. Broomall was a trustworthy man. On no ground of law, nor from any consideration showing any equitable right in the matter, can these claims be sustained. The clerk will therefore enter an order that the claims aforesaid be disallowed and that the claimant pay the costs of the hearing of the rule.